1002-8007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **YVONNE SCHILLING** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **DOCKET NO: CA 07-344-S** |
| | ) | |
| **ESSEX INSURANCE COMPANY** | ) | |
| **Defendants** | ) | |

**ESSEX INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I. Statement of the Case/Facts

This is an action for declaratory judgment originally filed by the plaintiff, Ms. Yvonne Schilling against her insurer, Essex Insurance Company ("Essex"), in the Providence Superior Court, State of Rhode Island. The action was later removed by Essex to this court for adjudication.

## II. The Policy

Essex Insurance Company issued a commercial general liability policy to Ms. Yvonne Schilling for property she owns at 94 Angell Street, Providence, Rhode Island. The property is a five unit owner-occupied rental property. A copy of the Essex policy is attached as **Exhibit A.**

The Essex policy contains the following relevant provisions:

> Commercial General Liability Coverage Form
>
> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is not covered.
>
> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declaration, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II –Who Is An Insured. Other words and phrases that appear in quotation marks have special meaning. Refer to Section V. –Definitions.

SECTION I - Coverages

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments –Coverage A and B.

. . .

SECTION V –DEFINITIONS

. . .

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . .

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> . . .
>
> 17. "Property Damage" means:
>
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> 18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which the insurance applies as alleged. "Suit" includes:
>
> a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
>
> b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insures submits with our consent.

The policy also contains a number of relevant endorsements. Endorsement M/E-002 (1/05) provides:

> ADDITIONAL CONDITIONS ENDORSEMENT
>
> THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM OR COVERAGE PART (hereinafter referred to as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.
>
> This insurance does not apply to 'bodily injury', 'property damage', 'personal injury', 'advertising injury' or any injury, loss, or damages including consequential injury, loss or damage, arising out of, caused by or contributed to or as a result of:
>
> 1.
>
> . .

> (D) If contractors or subcontractors are used, it is a condition of coverage that you use only those that are insured, and carry at a minimum Commercial General Liability coverage with limits at least equal to the limits of this policy, name you as an additional insured in their policy, and carry workers compensation insurance, and you require and secure certificates of insurance confirming same. Failure to comply with this condition does not void your coverage, however, limits of liability hereunder will be reduced and apply as a 'sublimit' of liability, being a Combined Single Limit, $50,000 each occurrence and in the Aggregate, including loss adjustment expenses and defense.
>
> The sublimit would be the most payable for all damages arising out of any one occurrence, and the most payable for all claims under this policy, including investigation and defense. If such sublimits were tendered or exhausted, we would not defend or continue to defend in any suit.
>
> Further, there is no coverage under this policy for 'bodily injury', 'personal injury' or 'property damage' sustained by any contractor, self-employed contractor, and/or subcontractor, or any employee, lease worker, temporary worker or volunteer help of same.
>
> A copy of this endorsement is attached as Defendant's **Exhibit B.**

Furthermore, the Combination General Endorsement, ME-001 (01/06) states, "12. Where there is no coverage under this policy, there is no duty to defend."

**III. The Facts**

In July of 2006, Ms. Schilling contracted with James Casale Painting & Wallpapering Inc. to paint the exterior of her owner-occupied rental property. While painting the plaintiff's property, Mr. James Casale allegedly injured himself. Thereafter, he sued Ms. Schilling in the case of <u>Casale v. Shilling</u>, C.A. 07-2419, in Providence Superior Court. In that action, Mr. Casale alleges that "the Plaintiff sustained serious and permanent injury when a railing located on the back staircase pulled away from the house causing the Plaintiff to fall and injure himself." (Casale Complaint, paragraph 4, Defendant's **Exhibit C**).

Thereafter, Ms. Schilling notified Essex Insurance Company of the Casale complaint. Because the clear and unambiguous terms of the insurance policy and the relevant endorsement quoted above excludes any coverage for personal injuries sustained by any contractor, Essex notified Ms. Schilling that it had a no duty to defend and indemnify via correspondence to Ms. Schilling dated May 21, 2007. **(Defendant Exhibit D).** Thereafter, Ms. Schilling filed this declaratory judgment action against Essex. Because there are no genuine issues of material facts in dispute and based on the clear and unambiguous terms of the insurance policy, Essex now moves for summary judgment seeking an declaration of the court that Essex does not owe Ms. Schilling a duty to defend or indemnify in the underlying personal injury suit filed by her painting contractor.

## IV. ARGUMENT

### A. Standard of the Summary Judgment

In ruling upon a motion for summary judgment, the court is obligated to examine the pleadings, depositions, answers to interrogatories, admissions on file, and the parties' affidavits to determine if a genuine issue of material fact exists and if the moving party is entitled to judgment. (See Super. Ct. R. Civ. P. 56(c); see also Saltzman v. Atlantic Realty Company, Inc., 434 A.2d 1343 (R.I. 1981); see also Ludwig v. Kowal, 419 A.2d 297, 301 (R.I. 1980)). Now that the defendant has moved for summary judgment, the plaintiff has an "affirmative duty to respond with specific facts that would constitute a genuine issue for trial." Ludwig at 301; Super. Ct. R. Civ. P. 56(c). It cannot "rest upon the mere allegations or denials of [his] pleadings." Id. Although summary judgment may be a drastic remedy, it is required as a matter of law when there is no genuine issue of material fact.

The United States Supreme Court indicated that the specific inquiry under Fed. R. Civ. P. 56(c) is whether evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, 106 S.Ct. 2502, 477 U.S. 242, 91 L.Ed.2d 202 (1986). In Anderson, as well as in Celotex Corp. v. Catrett, 106 S.Ct. 2548, 477 U.S. 317, 91 L.Ed.2d 265 (1986), the Court emphasized the importance of summary judgment as a means of filtering out cases which should not go to trial. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." Celotex, 106 S.Ct. at 2553. The Court further stated that:

> Rule 56 must be construed with due regard, not only for the rights of persons, claims and defenses tried to a jury, but also to the rights of persons opposing such claims and defenses to demonstrate in a manner provided by the rule, prior to trial, that the claims and defenses have no factual basis.

Id. at 2555.

**B. Interpretation of Provisions of Insurance Contracts**

The interpretation of a contract of insurance is a matter of law and therefore falls within the purview of the court. "[I]t is well settled that when interpreting an insurance policy, [the court] applies the same rules as those applied to the construction of contracts, and [does] not depart from the literal language of the policy absent a finding that the policy is ambiguous." Martinelli v. Travelers Ins. Companies, 687 A.2d 443, 445 (R.I. 1996). "An insurance policy is a contract, and if its terms are clear and unambiguous, the parties are bound by the agreement." Hughes v. American Universal Insurance, 423 A.2d 1171, 1171 (R.I. 1981). "The Court's primary charge is to examine the insurance policy in its entirety in order to determine the intent of the parties and whenever, possible, to give that intent effect. The Court will begin its inquiry

with the terms of the policy. The language used in the policy must be given its plain, ordinary, and usual meaning. When the terms are found to be clear and unambiguous, the task of judicial construction is at an end. The contract terms must then be applied as written and the parties are bound by them. Casco Indemnity Company v. R.I. Interlocal Risk Management Trust, 929 F. Supp. 65 (D.R.I. 1996) affirmed in part, reversed in part, 113 F.3d 12 (1st Cir. 1997).

**C. The Duty to Defend**

Under Rhode Island law, "it is well established that 'an insurer's duty to defend is a function of the allegations in the complaint filed against the insured[,]' and that 'if the allegations bring the case within the scope of the risks covered by the policy, the insurer must defend regardless of whether the allegations are groundless, false, or fraudulent." Sanzi. v. Shetty, 864 A.2d 614, 618 (R.I. 2005). In determining whether a duty to defend exists, Rhode Island courts apply what is commonly referred to as the "Pleadings Test." As the Rhode Island Supreme Court has noted:

> "[t]hat test requires the trial court to look at the allegations contained in the complaint, and 'if the pleadings recite facts bringing the injury complained of within the coverage of the insurance policy, the insurer must defend irrespective of the insured's ultimate liability to the plaintiff."
>
> Progressive Casualty Ins. Co. v. Narragansett Auto Sales, 764 A.2d 722, 724 (R.I. 2001).

Applying said standard, Rhode Island courts have consistently held that an insurer's duty to defend is broader that its duty to indemnify. "[A]s a general principal, this court can find that the duty to defend arises when the complaint in the underlying tort action contains facts sufficient to bring the case within the coverage of the policy, regardless of whether the plaintiffs

in the tort action will prevail in that tort action" Mellow v. Medical Malpractice Joint Underwriting Ass'n of Rhode Island, 567 A.2d 367 (R.I. 1989).

In the matter currently before the Court, a review of the underlying pleading and the Essex policy clearly and unequivocally demonstrate that there is no coverage for the Casale's claim. The Casale complaint seeks personal injuries "sustained . . . when a railing located on the back staircase pulled away from the house causing [Mr. Casale] to fall and injure himself." (Casale Complaint, paragraph 4). The Essex policy specifically excludes coverage for personal injuries to contractors the insured hires.

Under the unambiguous policy endorsement terms "there is no coverage under this policy for 'bodily injury', 'personal injury' or 'property damage' sustained by any contractor, self-employed contractor, and/or subcontractor, or any employee, lease worker, temporary worker or volunteer help of same." The clear and unambiguous exclusion specifically encompasses the exact factual circumstance presented in the underlying claim. "It is well settled . . .that when the terms of an insurance policy are found to be clear and unambiguous judicial construction is at an end." Dellagroatta v. Liberty Mutual Ins. Co., 639 A.2d. 980, (980 (R.I. 1994). Here, there is no room for judicial construction of the Essex policy since it specifically encompasses the factual scenario presented in this claim. Therefore, there is no coverage and likewise, no duty to defend.

Essex anticipates that the plaintiff will argue that the above quoted exclusion should be rendered void for public policy grounds. Since this is a general commercial liability policy, there are no minimum statutory requirements which would govern the terms and conditions of the policy like there are in automobile and uninsured motorist coverage or fire policies.[1] In these types of policies, the state legislature has mandated statutory minimums for coverage from which a strong public policy purpose can be found. See Rueschemeyer v. Liberty Mutual Ins. Co., 673

[1] See R.I.G.L.§ 27-5-2.

A.2d 448 (R.I. 1996) (holding that the purpose of R.I.G.L § 27-7-2.1 is to protect the names insured from economic loss for injuries suffered as a result of the negligent operation of an uninsured motor vehicle and that insurance policies that restrict coverage afforded by the uninsured motorist statute are void).

In commercial general liability policies, however, the legislature has not mandated certain minimum requirements or coverages. Therefore, any reliance on public policy arguments to void the Essex endorsement at issue would essentially require the court to surmise a public policy argument and supplant the lack of action by the legislature. To do so would call into question any and all provisions of a CGL policy. Rather, the court must look to the clear and unambiguous terms of the policy, and apply it as written while avoiding an attempt to rewrite the policy to suit some unknown and unfathomable public policy argument not memorialized by any legislative action or duly enacted statutory scheme.

**IV. CONCLUSION**

For the above stated reasons, the defendant Essex Insurance Co. respectfully requests that its motion for summary be granted and the this court declare that it has no contractual obligation to defend or indemnify under its commercial general liability policy issues to Ms. Schilling.

ESSEX INSURANCE COMPANY

By its Attorneys,

/s/ Michael J. Marcello

---

**Attorneys for Defendant**
JOHN P. GRACEFFA, #(5221)
MICHAEL J. MARCELLO, #(5201)
MORRISON MAHONEY LLP
10 Weybosset Street, Suite 900
Providence, RI 02903
(401) 331-4660 Fax: (401) 351-4420

## CERTIFICATE OF SERVICE

I hereby certify that this documents filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 21st day of February, 2008

/s/ Michael J. Marcello

---

Michael J. Marcello, BBO No. 5221